ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2008 JAN 29 AM 10: 33
CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JAMES PETERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 306-046 |
| ) | |
| JAMES DONALD, Commissioner, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Georgia State Prison, in Reidsville, Georgia, commenced this civil action pursuant to 42 U.S.C. § 1983. Plaintiff is *pro se* and proceeding *in forma pauperis*. This matter comes before the Court on Defendants' motion for summary judgment. (Doc. no. 73). Plaintiff opposes Defendants' motion. (Doc. no. 78). For the reasons stated below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants.

### I. FACTS

Plaintiff was incarcerated at Telfair State Prison ("TSP") when the events forming the basis of Plaintiff's claims occurred. Plaintiff contends that Commissioner Donald ("the Commissioner"), Deputy Warden Burnette ("Defendant Burnette"), Deputy Warden Ethredge ("Defendant Ethredge"), Lieutenant Spires ("Defendant Spires"), and Sergeant Spinn ("Defendant Spinn") conspired to raise his security level and to transfer him from TSP, a

medium security facility, to the Georgia State Prison ("GSP"), in retaliation for filing grievances regarding the conditions of confinement at TSP. (Doc. no. 1, pp. 5-10; doc. no. 78, p. 1). In support of his allegations, Plaintiff attached copies of several letters he sent to Defendants and others complaining about the conditions at TSP; he also included some responses to his letters.[1] (Doc. no. 1, pp. 11-20; doc. no. 78, pp. 1, 2).

Plaintiff, an HIV-positive homosexual, is currently incarcerated for Solicitation of Sodomy, Sale and Distribution of Illegal Drugs, and Reckless Conduct by a Person Infected with HIV. (Doc. no. 76, Ex. B, Institutional File (hereinafter "Inst. File"), pp. 427, 430, 431). Because of Plaintiff's special medical needs, he was transferred from Muscogee County Prison to Coastal State Prison for diagnostics in July 2003. (Id. at 393). While at Coastal State Prison, Plaintiff's initial classification was completed, and he was classified as close security. (Id. at 411). After completing diagnostics, he was transferred to Men's State Prison in January 2004. (Id. at 375).

---

[1] The Court cautioned Plaintiff:

> Should a defendant file a motion for summary judgment . . . that was supported by affidavits, Plaintiff must file counter-affidavits if he desires to contest the defendants's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertion made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

(Doc. no. 7, pp. 6, 7). However, Plaintiff failed to file a separate statement of material facts or any counter-affidavits contesting Defendants' statement of facts. Rather, Plaintiff merely filed a response with factual allegations to Defendants' motion for summary judgment. (See doc. no. 78).

While at Men's State Prison, Plaintiff assaulted a female corrections officer, received a disciplinary report, and was transferred to Phillips State Prison in March 2004. (Id.). Plaintiff was then transferred to TSP in November 2004. (Id. at 141.1). Upon arrival at TSP, Plaintiff's security designation was reviewed and remained at close.[2] (Id. at 408). Plaintiff was assigned to the new arrival dorm in unit E-2. (Id. at 321). On November 27, 2004, Plaintiff wrote a letter to Jackie Kelsey,[3] of Inmate Classification, requesting a transfer. (Id. at 312, 313). Plaintiff was moved to unit B-1 on November 29, 2004 to make room for new arrivals at TSP. (Id. at 303.1). On December 14, 2004, Plaintiff, in a letter to Defendant Ethredge,[4] requested to be moved to unit E-2 stating, "[H]e could not take being in this environment." (Id. at 310, 311). Plaintiff also stated that being in the A and O dorms would allow him to have new roommates more often. (Id.). Plaintiff's request was denied because space was needed in that unit for new arrivals. (Id., Ex. E, Ethredge Aff. (hereinafter "Ethredge Aff."), ¶ 7).

On December 15, 2004, Plaintiff again requested to be moved to unit E-2. (Id., Inst. File, p. 308). Again, this request was denied. (Id.). On January 10, 2005, Plaintiff again requested to be moved from unit B-1 to unit C-2. (Id. at 303). Plaintiff's reason for

---

[2] This was Plaintiff's annual security review per the Georgia Department of Corrections ("GDC") SOP IIC02-0003, entitled Security Reclassification. (Doc. no. 76, Ethredge Aff., ¶ 6).

[3] Jackie Kelsey was named as a Defendant in the above-captioned case; however, all claims against her were dismissed for lack of service. (Doc. no. 63).

[4] Defendant Ethredge has been the Deputy Warden of Care and Treatment at TSP since December 1, 1998. (Doc. no. 76, Ethredge Aff., ¶ 2).

3

requesting the move was "the terrible dislike for gay inmates in [B-1]" and his "need to be able to be around other homosexual[s]. C-2." (Id.). This request was denied. (Id.). However, on January 13, 2007, Plaintiff was moved to unit C-1 in an effort to avoid conflict. (Id. at 303.1; Ethredge Aff., ¶ 8).

On February 6, 2005, Plaintiff requested protective custody, alleging he received threats from his roommate. (Id., Inst. File, pp. 299-301, 301.1). His request was granted. (Id. at 301.1). At all times relevant to Plaintiff's complaint, Defendant Spinn was in charge of TSP's F-building, where inmates in protective custody are housed.[5] (Id., Ex. G, Spinn Aff. (hereinafter "Spinn Aff."), ¶ 3). On March 1, 2005, Plaintiff was released from protective custody, per his request, and moved back to unit E-2. (Id., Inst. File, p. 286). Despite his previous request to return to unit E-2, Plaintiff, on March 24, 2005, requested to be moved closer to medical because of problems in his legs. (Id. at 283). This request was denied. (Id.). However, on April 5, 2005, Plaintiff was moved to unit D-1, which is close to medical, pursuant to a request made by Dr. Lift. (Id. at 285; Ethredge Aff., ¶ 10). On that same day, Plaintiff requested protective custody, alleging problems with two inmates. (Id., Inst. File, pp. 279, 280). The very next day at his segregation hearing, Plaintiff stated that

---

[5]Defendant Spinn served on the classification committee for segregation hearings for inmates assigned to his unit. (Doc. no. 76, Spinn Aff., p. ¶ 3). However, he was not involved in any security reclassification actions for Plaintiff or any other inmate. (Id.). Defendant Spinn's role during segregation hearings, as the unit supervisor, was to record any changes in an inmate's status on his roster and to make sure those changes were implemented. (Id.). Defendant Spinn was serving on the Classification Committee when Plaintiff's protective custody status was changed from voluntary to involuntary. (Id. at 4). The Classification Committee's decision was to change Plaintiff's protective custody status to involuntary so that he would remain in protective custody. (Id.). Defendant Spinn complied with the Classification Committee's decision. (Id.).

4

he no longer feared for his life and that he wished to return to general population. (Id. at 278). Thus, on April 6, 2005, Plaintiff was moved back to unit D-1. (Id.). One day later, Plaintiff again requested to be moved from unit D-1, alleging problems and threats from his roommate. (Id. at 247). This request was denied. (Id.).

In light of Plaintiff's multiple requests to be moved, Defendant Ethredge wrote a memorandum explaining that (1) Plaintiff was trying to manipulate a move back to the C-building, (2) Plaintiff tried to get another inmate to write a false statement against Nurse Gore,[6] and (3) while Plaintiff denies that he participates in sexual activity, there have been numerous reports from inmates that he is in fact active. (Id. at 271).

On April 10, 2005, Plaintiff requested protective custody, alleging that three inmates in unit D-1 had solicited sex from him. (Id. at 260-62). At the end of Defendant Spires's shift, Plaintiff requested that Defendant Spires place him in protective custody. (Id., Ex. F, Spires Aff. (hereinafter "Spires Aff."), ¶ 3). Plaintiff complained that he was being pressured into having sex with three inmates in unit D-1. (Id.). Defendant Spires advised Plaintiff that he would escort Plaintiff to protective custody, but also that he believed Plaintiff was requesting protective custody to manipulate his housing assignment. (Id.). Moreover, Defendant Spires advised Plaintiff that he would inform Defendant Ethredge of his belief that Plaintiff was attempting to manipulate his housing assignment.[7] (Id.). At Plaintiff's

---

[6]According to the memorandum, Plaintiff attempted to get the other inmate to write a false statement against Nurse Gore because Plaintiff wanted Nurse Gore to be fired because she would not request that he be moved to a certain dorm. (Doc. no. 76, Inst. File, p. 272).

[7]Defendant Spires was not a member of the classification committee and did not participate in any of the Classification Committee's actions regarding Plaintiff. (Doc. no. 76, Spires Aff., ¶ 4).

5

protective custody hearing on April 11, 2005, his request for protective custody was granted, even though he attempted to withdraw the request. (Id., Inst. File, p. 266; Ethredge Aff., ¶ 12). On April 12, 2005, Plaintiff wrote Warden Thompson requesting that he be released from protective custody and placed in unit C-2 with inmate Davis, another homosexual inmate. (Id., Inst. File, pp. 268-70).

On April 14, 2005, Plaintiff wrote Defendant Ethredge a letter, again requesting to return to unit C-2 and mentioning inmate Davis. (Id. at 263-65). This request was denied because of Plaintiff's April 10, 2005 allegations, and his continued attempt to manipulate a particular cell appointment. (Id., Ethredge Aff., ¶ 13). On that same day, Plaintiff's status was changed from voluntary protective custody to involuntary protective custody. (Id., Inst. File, pp. 254, 257). On April 14, 2005, Plaintiff refused to attend his segregation hearing, and thus, his status remained unchanged. (Id.). Plaintiff contends that he did not refuse to attend his segregation hearing, rather he was never informed of his segregation hearing. (Doc. no. 78, p. 4).

On May 11, 2005, Plaintiff again wrote Warden Thompson concerning a variety of complaints, ranging from his segregation to his desire to be moved and/or transferred. (Doc. no. 76, Inst. File, pp. 258.1-58.3). A 30-day segregation hearing was conducted on May 13, 2005. (Id. at 254). Although Plaintiff wanted to return to population, he remained in involuntary protective custody. (Id.). Plaintiff again wrote Warden Thompson on May 18, 2005 regarding his administrative segregation hearing and alleged policy violations.[8] (Id. at

---

[8]Two more 30-day segregation hearings were conducted on June, 10 and July 8, 2005, where it was decided that Plaintiff would remain in involuntary protective custody. (Doc. no. 76, Ethredge Aff., ¶ 15).

6

249-53).

On June 10, 2005, Plaintiff wrote a letter to the Commissioner alleging numerous violations at TSP. (Id. at 249.2, 249.3). On June 20, 2005, Plaintiff filed an Informal Grievance claiming that the heat in his dormitory adversely affected the medication he was taking. (Id., Ex. H, Wilkes Aff. (hereinafter "Wilkes Aff."), ¶ 14). In response, Plaintiff's counselor stated that Dr. Lift did not believe that the heat in the F-building was affecting Plaintiff's medical condition. (Id., Ex. L, Informal Grievance 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). Plaintiff then filed a Formal Grievance on June 27, 2005, again stating that the heat in his dormitory was a problem, as it adversely affected the medication he was taking. (Id. at Formal Grievance). Plaintiff's Formal Grievance was denied. (Id.). However, on July 10, 2005, Dr. Lift requested that Plaintiff be transferred to a more suitable facility, due to the increased temperatures in unit F.[9] (Id., Inst. File, p. 243).

Defendant Ethredge contacted Inmate Classification in Atlanta, Georgia to request a transfer and forwarded a copy of Dr. Lift's request. (Id., Ethredge Aff., ¶ 17). The transfer request submitted by TSP did not request a destination, and Plaintiff's ultimate destination and security level were determined by Inmate Classification. (Id. at 18). Plaintiff was transferred to GSP. (Id., Ex. Q, Transfer Order). According to Defendants, Plaintiff was transferred as a result of his prior assault on a female staff member, his criminal history of sexual deviance and recklessness, his suspected active homosexual behavior at TSP, and his

---

[9] Dr. Lift stated, "the temperature in the 'F' building is now an issue." (Doc. no. 76, Inst. File, p. 243).

7

repeated attempts to manipulate his housing assignments, as well as his special medical needs. (Doc. no. 75, p.10).

Defendant James Donald has been the Commissioner of the Georgia Department of Corrections since December 1, 2003. (Doc. no. 76, Ex. C, Donald Aff., ¶ 4). Plaintiff argues that the three letters he wrote and sent to the Commissioner, and the responses he received,[10] all indicate that the Commissioner was aware of the alleged retaliatory transfer. (Doc. no. 1, pp. 11-18).

Defendant Burnette was the Deputy Warden of Security at TSP from August 15, 1997 to August 31, 2005. (Doc. no. 76, Ex. D, Burnette Aff. (hereinafter "Burnette Aff."), ¶ 2). The responsibility of a Deputy Warden of Security is to oversee the entire security staff at TSP, as such, Defendant Burnette did not participate in classification issues such as work detail assignments, routine housing assignments, security reviews, segregation hearings, or the submission of routine transfer requests. (Id. at 4). Defendant Burnette's inmate correspondence file did not reveal any correspondence from Plaintiff. (Id. at 5). Moreover, any correspondence from Plaintiff addressed to Defendant Burnette regarding the allegations Plaintiff has raised would have been referred to the Deputy Warden of Care and Treatment. (Id.). In fact, such referrals were routinely made by the TSP staff, without Deputy Warden Burnette's input. (Id.). Defendant Burnette was not a member of the Classification

---

[10]Plaintiff received three responses to his letters to the Commissioner. These responses provide that the letters were reviewed by James L. Thrift, Senior Investigator Inmate Affairs and Appeals Unit/Southeast, and Robert McNair, Senior Investigator Inmate Affairs and Appeals. (Doc. no. 1, pp. 16-18).

8

Committee and did not participate in any of the Classification Committee's actions regarding Plaintiff. (Id. at 6). Finally, Defendant Burnette avers that he did not participate in the decisions to increase Plaintiff's security level or to transfer Plaintiff. (Id.).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[11] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex

---

[11] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

9

Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### III. DISCUSSION

Plaintiff contends that he was transferred from TSP, a close level security prison, to GSP, a maximum level security prison, in retaliation for filing and assisting others in filling grievances. (Doc. no. 1). Plaintiff argues that "[the Court] cannot conclude that the prison transfer would not likely deter a person of ordinary firmness from filing grievances at Telfair. All Defendants named in Plaintiff['s] complaint[,] all whom Plaintiff alleges instigated or had direct knowledge of the alleged retaliatory conduct." (Doc. no. 78, p. 2). Defendants assert that they are entitled to summary judgment on Plaintiff's retaliation claims as a matter

of law because: (1) Plaintiff did not exhaust his administrative remedies, (2) his claims fail on the merits, (3) Defendants cannot be held vicariously liable, and (4) they are protected by qualified immunity. (Doc. no. 73).

A.  **The Administrative Grievance Process**

Inmate grievance procedures at TSP are governed by SOP IIB05-0001. See SOP IIB05-0001 § VI(B), once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. SOP IIB05-0001 § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee

11

then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

**B.     Plaintiff's Failure to Exhaust Administrative Remedies**

Simply put, as exhaustion of administrative remedies is a "precondition" to filing suit, exhaustion under § 1997e(a) is a threshold inquiry. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); see also Alexander, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 126 S.Ct. 2378 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and

12

other critical procedural rules" along the way. Id. at 2386 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 , (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'"[12] Salas v. Tillman, No. 05-10399, 162 Fed. Appx. 918, 920, 2006 WL 122426, at *2 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

Here, Plaintiff's claims arise from his July 28, 2005 transfer from TSP to GSP. (Doc. no. 1, p. 3). According to the applicable SOP, Plaintiff was required to file an informal grievance "no later than 10 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." SOP IIB05-0001 § VI. Therefore, Plaintiff should have filed an informal grievance not later than August 7, 2005. A review of Plaintiff's grievance history at both TSP and GSP reveals that Plaintiff did not file any grievance asserting that his transfer from TSP to GSP was in retaliation of filing grievances at TSP. (Doc. no. 76, Wilkes Aff., ¶ 16; Ex. I, Kirkley Aff. (hereinafter "Kirkley Aff."), ¶ 27).

Notably, Plaintiff does not address the exhaustion issue in his response to Defendants' motion for summary judgment. (Doc. no. 78). As such, Plaintiff has not raised any genuine

---

[12]Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998).

13

issue of material fact regarding his exhaustion of administrative remedies. Even construing the facts of this case in the light most favorable to Plaintiff, he has failed to raise any question of fact, let alone a material question of fact. For instance, Plaintiff asserts that he wrote letters to Defendants and other persons regarding, among other things, his transfer. (Doc. no. 1; Doc. no. 78, p. 3). However, writing letters does not exhaust one's administrative remedies under SOP IIB05-0001. (See SOP IIB05-0001; Doc. no. 76, Kirkley Aff., ¶ 26).

As Plaintiff did not file any grievance alleging that he was transferred to GSP in retaliation for filing institutional grievances at TSP, he has failed to exhaust his administrative remedies prior to filing his complaint. Therefore, Defendants are entitled to summary judgment on Plaintiff's retaliation claims as a matter of law.

### C. Plaintiff's Claims Fail on the Merits

Even assuming Plaintiff had exhausted his administrative remedies, his claims must fail on the merits. The First Amendment prohibits prison officials from retaliating against inmates for filing lawsuits or administrative grievances, or for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). Nor may prison officials burden an inmate's First Amendment rights "with practices that are not reasonably related to legitimate penological objectives" or "act with the intent of chilling that First Amendment right." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (*per curiam*) (discussing alleged violation of First Amendment right of access to the courts) (citations omitted). Where a plaintiff has failed to establish a causal connection between his protected conduct and the alleged retaliatory action, summary judgment for the defendant is proper. Farrow, 320 F.3d at 1248-49. Stated

another way, "A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" Id. at 1248 (citing Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989)). The Eleventh Circuit has ruled that "[d]irect evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment." Harris, 65 F.3d at 917.[13]

Plaintiff contends that his transfer from TSP to GSP was in retaliation for his filing grievances regarding the conditions of confinement at TSP. (Doc. no. 1, p. 5; doc. no. 78, p. 1). Defendants assert that they have not retaliated against Plaintiff for filing grievances or any other reason. (Doc. no. 73, p. 21; doc. no. 76, Donald Aff., ¶ 2, Burnette Aff., ¶ 2, Ethredge Aff., ¶ 19, Spinn Aff., ¶ 5, Spires Aff., ¶ 5). Defendants also maintain that Plaintiff was transferred due to his own behavior and his special medical needs that arose in July of 2005. (Doc. no. 73).

Plaintiff proffers several self-serving conclusory allegations in support of his retaliation claim. For instance, Plaintiff claims that Defendant Spires's alleged comment that Plaintiff would not see the outside of the prison unit until he was transferred is proof of retaliation. (Doc. no. 78, p. 5). Even assuming Defendant Spires had made such a comment,[14] Plaintiff has failed to establish any causal connection between his protected

---

[13]In Harris, the Eleventh Circuit reversed the district court's decision granting summary judgment where the prisoner plaintiff submitted corroborating affidavits from fellow prisoners that stated a prison official commented that he filed disciplinary reports against the plaintiff, at least in part, in retaliation for prior litigation. Harris, 65 F.3d at 917.

[14]Defendant Spires denies that he told Plaintiff that he would not see the outside of this prison again until he was transferred. (Doc. no. 76, Spires Aff., ¶¶ 2, 3). Defendant Spires

conduct of filing grievances and the alleged retaliatory action, the transfer to GSP. The record in this case establishes that Defendant Spires did not have the authority to have Plaintiff transferred. As such, Plaintiff has not established a causal connection between Defendant Spires alleged comment and Plaintiff's transfer to GSP.

Plaintiff also contends that the dispute regarding whether Plaintiff refused to attend his segregation hearing, or simply had not been informed about his segregation hearing, is also proof of retaliation. (Id. at 4). Plaintiff again fails to establish any connection, let alone a causal connection, between the alleged failure to notify Plaintiff regarding his segregation hearings and his transfer. Moreover, although Plaintiff merely provides an unsupported statement that he was not informed of these hearings, the record establishes that on April 14, 2005, Plaintiff "Refused to attend hearing per Ofc. Smith." (Doc. no. 76, Inst. File, p. 257). As Plaintiff failed to file an opposing affidavit setting forth specific facts, the factual assertions made in Defendant's affidavit and documentation will be accepted as true. (See footnote 1, *supra*).

Finally, Plaintiff contends that Plaintiff's Transfer Order also proves his retaliation claim. (Doc. no. 78, p. 6). Specifically, Plaintiff contends that if he were indeed transferred for medical reasons, the Transfer Order would so state that; he claims that the Transfer Order would not say was moved for adjustment/behavior problems. (Id.). Because the Transfer

---

maintains that he:

> advised [Plaintiff] that he would escort [Plaintiff] to Protective Custody, but that [he] believed that [Plaintiff] was requesting Protective Custody to manipulate [Plaintiff's] housing assignment.

(Id.).

16

Order at issue does say adjustment/behavior problems, Plaintiff concludes that this proves his retaliation claim. (Id.). As discussed *infra*, Plaintiff's argument is unavailing. Defendants assert, and the record corroborates, that Plaintiff was transferred because of his prior assault on a female staff member, his criminal history of sexual deviance and recklessness, his suspected active homosexual behavior at TSP, his repeated attempts to manipulate his housing assignments, **and** his special medical needs regarding the heat in his cell in July of 2005. (Doc. no. 73, p. 10).

Furthermore, the evidence overwhelmingly establishes that Plaintiff was attempting to manipulate his housing assignment. In fact, Plaintiff requested to be transferred from TSP. It is also important to note that Plaintiff was not transferred from TSP until Dr. Lift, for medical reasons, requested that Plaintiff be transferred. (Doc. no. 76, Ex. A, Pl.'s Depo. (hereinafter, "Pl.'s Depo.") pp. 22, 23; Inst. File, pp. 312, 313; Grievance 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). A review of Plaintiff's incarceration file while at TSP reveals that:[15]

| | |
|---|---|
| 11-16-2004 | Plaintiff arrived at TSP and was housed in the unit for new arrivals, E-2. (Doc. no. 76, Inst. File, p. 321). |
| 11-27-2004 | **Plaintiff** wrote to Jackie Kelsey **requesting a transfer**. (Id. at 312, 313). |
| 11-29-2004 | Plaintiff was moved to unit B-2 to make room for new arrivals. (Id. at 303.1). |
| 12-14-2004 | **Plaintiff**, in a letter to Defendant Ethredge, **requested to be moved** to unit E-2. (Id. at 310, 311). |
| 12-15-2004 | **Plaintiff requested to be moved** to unit E-2. (Id. at 308). |

---

[15] Apparently, Plaintiff has continued his manipulation tactics while incarcerated at GSP. (See doc. no. 73, pp. 20, 21).

17

| | |
|---|---|
| 1-10-2005 | **Plaintiff requested to be moved** to unit E-2. (Id. at 303). |
| 01-13-2005 | Plaintiff was moved to unit C-1 to avoid any conflict. (Id. at 303.1). |
| 02-06-2005 | **Plaintiff requested protective custody.** (Id. at 299-301, 301.1). |
| 02-07-2005 | Plaintiff's protective custody request was granted. (Id. at 303.1). |
| 02-28-2005 | Segregation Bed Move. (Id.). |
| 03-01-2005 | **Plaintiff** was **released from protective custody per his request** and moved to unit E-2. (Id. at 286). |
| 3-24-2005 | **Plaintiff requested to be moved** closer to the medical unit. (Id. at 283). |
| 04-05-2005 | Plaintiff was moved to unit D-1, which is closer to the medical unit. (Id. at 285). |
| 04-06-2005 | **Plaintiff requested protective custody** from unit D-1. (Id. at 279, 280). |
| 04-06-2005 | At his segregation hearing, **Plaintiff** asserted that he no longer feared for his life and **requested to return** to population. (Id. at 278). |
| 04-07-2005 | **Plaintiff again requested to be moved** from unit D-1. (Id. at 247). |
| 04-10-2005 | **Plaintiff requested protective custody.** (Id. at 260-62). |
| 04-11-2004 | At Plaintiff's protective custody hearing regarding his April 10, 2005 request, he was granted protective custody, even though he attempted to withdraw his request. (Id. at 266). |
| 04-12-2005 | **Plaintiff** wrote Warden Thompson **requesting that he be released** from protective custody. (Id. at 263-70). |
| 04-14-2005 | **Plaintiff** wrote Defendant Ethredge **requesting that he be allowed to return** to general population. (Id. at 263-265). Plaintiff's status was changed from voluntary protective custody to involuntary protective custody. (Id. at 254, 257). |
| 05-11-2005 | **Plaintiff** wrote Warden Thompson **requesting**, among other things, **to be moved**. (Id. at 258.1-58.3). |

18

| | |
|---|---|
| 06-14-2005 | **Plaintiff** filed an informal grievance **requesting a transfer** due to alleged lack of security at the institution. (Grievance 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). |
| 07-06-2005 | Segregation. (Id. at 303.1). |
| 07-20-2005 | **Dr. Lift requested that Plaintiff be transferred** due to the increased temperatures in unit F. (Id. at 243). |
| 07-28-2005 | Plaintiff was transferred to GSP. (Id., Ex. Q, Transfer Order). |

In light of the record, it is difficult to arrive at Plaintiff's conclusion that he was transferred to GSP in retaliation for filing grievances. As previously established, Plaintiff requested to be transferred on numerous occasions. In fact, when asked at his deposition if he had ever requested to be transferred from TSP, Plaintiff responded, "I asked for a transfer but not a disciplinary transfer. . . ." (Doc. no. 76, Pl.'s Depo., pp. 22, 23). Moreover, the record establishes that the decision to transfer Plaintiff to GSP, a higher security level prison, was made by the Classification Committee in Atlanta, Georgia, and not by Defendants. (Id., Ethredge Aff., ¶ 17). Notably, despite Plaintiff's penchant for filing grievances,[16] he was not transferred until Dr. Lift requested such a transfer for medical reasons. Once Dr. Lift requested that Plaintiff be transferred, Defendant Ethredge contacted Inmate Classification in Atlanta, Georgia, requested a transfer, and faxed a copy of Dr. Lift's request. (Id. at 16). The transfer request submitted by TSP did not request a destination, and Plaintiff's ultimate destination and security level were determined by the Classification Committee. (Id. at 18). As such, Plaintiff has failed to establish a causal connection between his filing of grievances

---

[16]Although Plaintiff failed to follow the standard grievance procedure for his alleged retaliation claim, the record indicates that he is quite familiar with the grievance process and has utilized the process on numerous occasions, not only for himself, but also in assisting other inmates. (See doc. no. 1, doc. no. 76, Exs., K, L, R-U, doc. no. 78).

and his transfer to GSP.

In sum, the facts establish that Plaintiff was transferred because of his prior assault on a female staff member, his criminal history of sexual deviance and recklessness, his suspected active homosexual behavior at TSP, his repeated attempts to manipulate his housing assignments, and his special medical needs regarding the heat in his cell in July of 2005. Thus, reviewing the evidence in the light most favorable to Plaintiff, the Court finds that there are no genuine issues as to any material fact, and that Plaintiff's First Amendment rights were not violated.[17] Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims.

## IV. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendant.

SO REPORTED and RECOMMENDED this 29th day of January, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[17] The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.